**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Glenn Calame, | No. CV-12-02363--DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Commissioner, Social Security Administration, | |
| Defendant. | |

Plaintiff Glenn Calame filed an opening brief challenging the Commissioner's denial of his application for Social Security Benefits. Doc. 21. The Commissioner filed a response (Doc. 27), and the motion is ripe for review. For the reasons that follow, the Court will grant Plaintiff's appeal, reverse the Commissioner's disability determination, and remand for an award of benefits.

**I.   Background.**

Plaintiff filed an application for supplemental security income benefits and disability insurance benefits on December 9, 2004, and August 16, 2005, claiming disability as of June 1, 2004. Tr. at 291.  Plaintiff's claims were denied initially and upon reconsideration, and Plaintiff was granted a hearing before Administrative Law Judge ("ALJ") Ronald C. Dickinson on February 3, 2009.  Tr. at 291-98.  The ALJ issued a written opinion on May 26, 2009, finding that Plaintiff was not disabled.  Tr. at 298. Plaintiff appealed, and the Appeals Council remanded to the ALJ, directing him to make further findings related to Plaintiff's subjective complaints, Plaintiff's residual functional

capacity, and the opinion of a vocational expert on how Plaintiff's assessed limitations affected his occupational base. Tr. at 20. The ALJ held a second hearing on September 28, 2010, in which Plaintiff testified represented by counsel. *Id.* Following this hearing, the ALJ determined once again that Plaintiff was not disabled under the terms of the Social Security Act. Tr. at 30. The Appeals Council denied Plaintiff's request for review (Tr. at 10-13), making the denial of benefits the Commissioner's final determination for purposes of judicial review.

**II.     Standard of Review.**

The Commissioner's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

**III.    Analysis.**

For purposes of Social Security benefits determinations, a disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505. Determining whether a claimant is disabled involves a sequential five-step evaluation. The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment, or (4) his residual functional

1  capacity ("RFC") precludes him from performing his past work.[1]  If at any step the
2  Commission determines that a claimant is or is not disabled, the analysis ends; otherwise,
3  it proceeds to the next step.  If the claimant establishes his burden through step 4,
4  the Commissioner must find the claimant disabled unless he finds that the claimant can
5  make an adjustment to other work.  The Commissioner bears the burden at step 5 of
6  showing that the claimant has the RFC to perform other work that exists in substantial
7  numbers in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

8  The ALJ found at step 1 that Plaintiff had not worked since his alleged onset of
9  disability on July 1, 2004.  Tr. at 23.  At step 2, the ALJ found that Plaintiff suffered from
10 the following impairments that are severe in combination: status-post multiple surgeries,
11 left knee; status-post surgery, right knee; status-post surgery, left shoulder; right-sided
12 carpal tunnel syndrome; and depression and anxiety due to Plaintiff's physical ailments.
13 *Id.*  The ALJ found at step 3 that none of these impairments or the combination thereof
14 met or medically equaled one of the listed impairments.  *Id.*  The ALJ found that Plaintiff
15 had the RFC to perform light work with restrictions, limited to unskilled work.  Tr. at 24.
16 The ALJ found at step 4 that Plaintiff would not be able to perform any of his past
17 relevant work as a manufacturing technician and service technician.  Tr. at 28.  The ALJ
18 found at step 5 that Plaintiff was capable of adjusting to other light, unskilled work, such
19 as parking lot attendant and cashier, that existed in significant numbers in the economy.
20 Tr. at 29.  The ALJ therefore concluded that Plaintiff was not disabled.  Tr. at 30.

21 Plaintiff argues that the ALJ's determination was based on legal error because the
22 ALJ (1) improperly rejected his treating physicians' opinions, (2) arrived at an RFC that
23 precludes sustained full-time work, (3) misinterpreted evidence to Plaintiff's detriment
24 and failed to include all of Plaintiff's severe impairments, and (4) improperly rejected
25 Plaintiff's subjective pain testimony.  Doc. 21 at 2.

---

[1] RFC is the most a claimant can do with the limitations caused by his impairments.  *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945(a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

- 3 -

**A.     Medical Source Opinion Evidence.**

"The medical opinion of a claimant's treating physician is entitled to 'special weight.'" *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988)).  "The rationale for giving the treating physician's opinion special weight is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *McCallister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (citations omitted).

Even when an ALJ finds that a treating physician's opinion is not entitled to controlling weight, that does not mean "'that the opinion should be rejected.'" *Id.* at 632 (quoting S.S.R. 96-2p at 4 (Cum. Ed.1996), *available at* 61 Fed. Reg. 34,490, 34,491 (July 2, 1996)).  According to the Social Security Administration, "'[i]n many cases, a treating source's medical opinion will be *entitled to the greatest weight and should be adopted, even if* it does not meet the test for controlling weight.'" *Id.* (quoting S.S.R. 96-2p at 4) (emphasis added).  An ALJ may reject "the treating physician's opinion, but only by setting forth 'specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.'" *Rodriguez*, 876 F.2d at 762 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (1986)).  The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725.

Where the treating physician's opinion is not contradicted by another physician, the ALJ's reasons for rejecting the opinion must be "clear and convincing." *Rodriguez*, 876 F.2d at 762; *see Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("[A]n ALJ may reject a treating doctor's medical opinion, if no other doctor has contradicted it, only for 'clear and convincing' reasons supported by substantial evidence.") (citing *Reddick*, 157

F.3d at 725). Similarly, clear and convincing reasons are required to reject a treating physician's subjective judgments and ultimate conclusions. *See Lester v. Chater*, 81 F.3d 821, 830-33 (9th Cir. 1996); *Embrey*, 849 F.2d at 422 ("The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations. Accordingly, the ultimate conclusions of those physicians must be given substantial weight; they cannot be disregarded unless clear and convincing reasons for doing so exist and are set forth in proper detail.").

### 1. Dr. Stephen E. Hatfield.

Plaintiff argues that the ALJ improperly rejected the opinion of his treating physician Dr. Stephen E. Hatfield, D.O. Doc. 21 at 5-6. Dr. Hatfield saw Plaintiff for left knee pain from April 4, 2005, to August 1, 2005, and performed arthroscopic surgery on his left knee on May 17, 2005. Tr. at 154, 167. Dr. Hatfield wrote a letter on July 14, 2005, stating that he had diagnosed Plaintiff to have severe degenerative joint disease of the left knee. Tr. at 166. Dr. Hatfield opined that Plaintiff was currently disabled, in need of a total knee replacement, and that he was unable to stand or sit for long periods of time or do any heavy lifting, squatting, kneeling, or climbing. *Id.* Dr. Hatfield subsequently completed a statement of Plaintiff's ability to do work-related activities (physical) on September 27, 2005. Tr. at 154-56. In that assessment, Dr. Hatfield opined that Plaintiff had no restrictions lifting or carrying, could stand and/or walk less than two hours in an 8 hour workday, had no limitations on sitting, would need to alternate between sitting and standing with breaks and a lunch period providing sufficient relief, and could not climb, balance, stoop, kneel, crouch, or crawl. *Id.*

The ALJ stated that he did not give significant weight to Dr. Hatfield's opinion that Plaintiff was disabled because such determinations are reserved to the commissioner. He also discounted Dr. Hatfield's opinion because his assessments, completed two months apart, conflicted with regard to Plaintiff's ability to lift/carry and sit.

The Court finds that the ALJ gave sufficient reasons for rejecting the opinion of Dr. Hatfield. The ALJ was not required to give Dr. Hatfield's opinion regarding the

ultimate question of disability controlling weight. Although the opinions of treating physicians are generally afforded the greatest weight, opinions regarding whether a claimant meets the statutory definition of disability are reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); SSR 96-5p, 1996 WL 374183, at *2; *see Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Moreover, Dr. Hatfield's opinion that Plaintiff was disabled included the assessment that he was unable to stand or sit for long periods or do any heavy lifting – assessments Dr. Hatfield contradicted in his physical assessment two months later when he indicated that Plaintiff had no restrictions on sitting except a need to alternate between sitting and standing which could be accommodated through breaks, and no restrictions on lifting or carrying. *Compare* Tr. at 166 *with* Tr. at 154-56. A discrepancy between a treating doctor's own observations and opinions regarding a claimant's capabilities "is a clear and convincing reason for not relying on the doctor's opinion." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### 2.     Dr. Samar Sannoufi.

Dr. Sannoufi began seeing Plaintiff for complaints of fatigue, arthritis, and chest pain on August 10, 2007, and continued seeing him over a one and a half year period through January 1, 2009. Tr. at 203-242. On February 18, 2009, Dr. Sannoufi completed an assessment of Plaintiff's physical capacity in which he opined that Plaintiff was able to sit, stand, and walk less than 1 hour in an 8 hour workday and had to alternate between sitting and standing every quarter hour, he could frequently lift 11-20 pounds, frequently carry 6-10 pounds, could never squat, kneel, crawl, or climb, and he had other unspecified physical/psychological conditions that would likely affect his ability to perform non-exertional activities to a moderately severe degree. Tr. at 252-55.

The ALJ rejected this assessment because he found it to be based on Plaintiff's subjective complaints and to be in conflict with the clinical notes of Plaintiff's other physicians, Dr. Jeffrey Levine, M.D., and pain specialist Dr. Angelo Chirban. Tr. at 27-28. Plaintiff began seeing Dr. Levine on October 31, 2007 due to chronic pain in his left

knee and other longstanding problems related to a prior motor vehicle accident. Tr. at 374-427. Dr. Levine performed two surgeries on Plaintiff's left shoulder due to a rotator cuff tear, the first on February 7, 2008 (Tr. at 194, 358), and the second on December 16, 2008 (Tr. at 374), and a surgery on Plaintiff's right knee due to a lateral meniscal tear on April 30, 2009. Tr. at 436. Dr. Chirban treated Plaintiff for pain from November 3, 2008 through January 5, 2009 (*see* Tr. at 256-87), and on December 22, 2008 he assessed that Plaintiff had good pain control and functionality, and he reported that Plaintiff was able to function well on the current pain regimen, his quality of life had improved, and he was able to perform all the activities of daily living without assistance. Tr. at 258, 265, 272.

The Court finds that the ALJ reasonably discounted the opinion of Dr. Sannoufi. Dr. Sannoufi's treatment notes are largely illegible, leaving it unclear as to what evidence he relied on in assessing Plaintiff's physical limitations, and Plaintiff points to no clinical tests or observations upon which Dr. Sannoufi's assessment of his physical limitations is based. As noted above, Dr. Sannoufi also failed to specify which subjective symptoms caused Plaintiff to suffer additional limitations. *See* Tr. at 254. The ALJ need not accept the opinion of any medical source, including a treating source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (same).

The ALJ did not identify which of Dr. Levine's treatment notes he found to be in conflict with Dr. Sannoufi's assessment, but the Court finds this to be harmless error because the ALJ reasonably concluded on the basis of Dr. Sannoufi's lack of objective evidence and Dr. Chirban's contrary findings that Dr. Sannoufi's assessment as to Plaintiff's limitations was exaggerated. Tr. at 28. Plaintiff argues that there is no conflict between Dr. Sannoufi's assessment and that of Dr. Chirban because improvement in quality of life and the ability to perform the activities of daily living do not translate into the ability to perform full-time work. Doc. 21 at 6. The Court does not agree that this makes Dr. Chirban's findings irrelevant with respect to the weight the ALJ was to give to

1   the opinion of Dr. Sannoufi.  The fact that Dr. Sannoufi opined that Plaintiff was unable
2   to sit, stand, and walk for more than 1 hour in an 8 hour workday less than two months
3   after Dr. Chirban noted that Plaintiff was receiving adequate pain relief and could
4   perform all of his daily activities provides an additional specific, legitimate reason for
5   finding that Dr. Sannoufi's opinion lacks credibility.

### B.    The RFC.

The ALJ stated that Plaintiff had the RFC "to perform light work with restrictions as light work is defined in 20 C.F.R. 404.1567(b)."  Tr. at 24.  He went on to specify that

> The claimant is able to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently with the option to alternate between sitting and standing at will.  He should never crawl, crouch, climb, squat, or kneel.  In addition, he should not use his upper extremities for work above the shoulder level, and should not use his lower extremities for repetitive pushing or pulling.  Finally, the claimant is limited to performing unskilled work.

*Id.*

Plaintiff argues that the RFC set by the ALJ does not allow for any full time work. Doc. 21 at 7-8.  Plaintiff bases this assertion on the fact that the ALJ found he had the ability to "perform light work with restrictions as light work is defined in 20 C.F.R. 404.1567(b)[,]" but the ALJ's description of his RFC included standing and walking no more than 2 hours a day, a sit/stand option, and a 10 pound lifting capacity – limitations not entirely consistent with the ability to do light work – and the ALJ began his questions to the vocational expert by posing a hypothetical in the sedentary category.  Doc. 21 at 8; *see* Tr. at 24, 28, 472.  Plaintiff argues that because the vocational expert testified that there are no jobs in the sedentary category with a sit/stand option, the actual RFC set by the ALJ precludes any sustained employment.  Doc. 21 at 8.

Plaintiff's arguments are without merit.  The ALJ repeatedly described Plaintiff's RFC as the ability to do light work "with restrictions" and the ability to do "less than the full range of light unskilled work."  Tr. at 24, 28.  The fact that the ALJ's description of Plaintiff's RFC contained some restrictions found in the statutory definition of sedentary

- 8 -

work is consistent with these findings and does not mean, as Plaintiff appears to argue, that Plaintiff is precluded from all work because his RFC is not completely in line with either the light or sedentary categories. When the vocational expert testified in response to the ALJ's initial query that there were no jobs in the sedentary category that provided a sit/stand option, the ALJ stated "let's just forget about calling it sedentary" and clarified that he wanted to know whether there were jobs with a sit/stand option that would be available to Plaintiff given all of his described limitations, including the inability to lift more than 10 pounds. Tr. at 473-74. The vocational expert testified that there were such light, unskilled jobs as parking lot attendant and cashier, and that these jobs would, in his professional experience, allow for a sit/stand option. Tr. at 474-75. The ALJ reasonably relied on the vocational expert's testimony that Plaintiff's reduced ability to perform light work with a sit/stand option as described in the ALJ's RFC assessment would allow for sustained full-time employment.

### C. The ALJ's Assessment and Interpretation of the Evidence.

#### 1. Plaintiff's Severe Impairments.

Plaintiff argues that the ALJ erred at step 2 by not including his lumbar problems as a severe impairment despite the ALJ's discussion of evidence in some or part of at least seven paragraphs showing lumbar spinal stenosis, a genetically narrowing of the spinal canal, disc degeneration and disc bulging, and resultant epidural injections. Doc. 21 at 9; *see* Tr. at 25-26. The Court agrees that this was error.

The ALJ referred to evidence showing Plaintiff's lumbar impairments, such as an X-ray of the lumbar spine conducted in March 2004 and three separate MRIs of the lumbar spine conducted in July 2004, June 2008, and June 2009. Tr. at 24-25; *see* Tr. at 351-52, 196, 379.[2] Such examinations were precipitated by Plaintiff's complaints of back pain, bilateral leg pain, and numbness. *See, e.g.*, Tr. at 351, 379. Social Security Regulations define a severe impairment as one that significantly limits one's physical or

---

[2] The ALJ's reference to Plaintiff's lumbar spine X-ray as Exhibit 1F/38 cannot be located. Exhibit 1F appears to be omitted from the record submitted to the Court.

- 9 -

1 mental ability to do basic work activities, such as walking, standing, sitting, lifting, 2 pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521(a) & (b)(1). 3 Based on the above-cited evidence, the ALJ's exclusion of Plaintiff's lumbar problems 4 from the severe impairments noted at step 2 was not supported by substantial evidence on 5 the record and was legal error. *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) 6 (An ALJ's determination that impairments are not medically severe must be supported by 7 "substantial evidence . . . that [Plaintiff] did not have a medically severe impairment or 8 combination of impairments.").

9 The Commissioner argues on the basis of *Bowen v. Yuckert*, 482 U.S. 137, 155 10 (1987) (O'Connor, J. concurring), that step 2 is merely a threshold step to screen out 11 groundless claims and that because Plaintiff's claims survived step 2, it was not error to 12 omit his lumbar problems as long as the ALJ considered all of Plaintiff's impairments, 13 both severe and non-severe, at subsequent steps. Doc. 27 at 11. The Commissioner's 14 reliance on *Yuckert* is misplaced. *Yuckert* found that it was valid for the regulations to 15 require a claimant to make a threshold showing of severity at step 2. 482 U.S. at 145-52. 16 The concurrence to which the Commissioner cites confirms that without this showing it 17 would be impossible for a claimant to go on to meet the statutory definition of a 18 disability. *Id*. at 155. It does not, as the Commissioner suggests, relieve the ALJ from 19 including all severe limitations at step 2 where a threshold showing has been met.

20 The Commissioner argues on the basis of *Lewis v. Astrue*, 498 F.3d 909, 911 (9th 21 Cir. 2007), that even if the omission of Plaintiff's lumbar problems as severe impairments 22 at step 2 was error, the error was harmless because the ALJ considered Plaintiff's back 23 impairments in arriving at his RFC assessment. Doc. 27 at 11-12. *Lewis* found that any 24 error of the ALJ in failing to list a claimant's bursitis as a severe impairment at step 2 was 25 harmless because the ALJ extensively discussed the claimant's bursitis at step 4 and 26 included related physical limitations in his RFC, such as restrictions on standing, 27 walking, and repetitive kneeling, crouching, and crawling. 498 F.3d at 911.

28 Unlike *Lewis*, the Court is unable to determine that the omission of Plaintiff's

lumbar problems as a severe impairment was harmless because, despite the fact that the ALJ summarized Plaintiff's lumbar X-ray and MRI findings, there is no evidence that he incorporated these findings into his RFC assessment.  The ALJ partially discounted the opinion of the State agency consulting examiner, Dr. Malcolm McPhee, as to Plaintiff's ability to lift and carry 20 pounds occasionally and 10 pounds frequently because he found that Dr. McPhee's review of the medical records was minimal and that "voluminous medical evidence," including evidence of Plaintiff's shoulder impairments, supported a more restrictive lift and carry capacity.  Tr. at 27.  The ALJ also gave the benefit of the doubt to Plaintiff's testimony that he needed to alternate sitting and standing despite Dr. McPhee's contrary conclusion.  Tr. at 28.  He did not, however, address how the evidence supporting Plaintiff's lumbar problems might have altered Dr. McPhee's findings, specifically the finding incorporated into the ALJ's conclusion that Plaintiff could stand and walk at least 2 hours and sit no less than 6 hours in an 8 hour workday.  *Id.*  Since there is no clear evidence that the ALJ incorporated Plaintiff's lumbar problems into his RFC assessment, the Court cannot conclude that his failure to consider them as a severe impairment was harmless error.

**2.    Other Evidence.**

**a.    Plaintiff's Surgeries.**

Plaintiff argues that it was legal error for the ALJ not to factor in his knee and shoulder surgeries as an additional basis for disability because he underwent four surgeries over a fourteen month period between February 2008 and April 2009, and even a hypothetical two weeks off for convalescence after each one would have precluded him from performing full time work for a period of more than 12 months.  Doc. 21 at 9-10.  The Court is not persuaded that the ALJ's failure to factor in his unsubstantiated time off for convalescence was legal error.  At most, time off for recovery due to otherwise successful medical procedures would support a closed period of disability, but Plaintiff did not apply for a closed period of disability, and he puts forth no evidence documenting the time he was unable to work due to recovery.  As the commissioner points out, the

record contains substantial evidence that Plaintiff recovered well and had good strength and range of motion after each of his surgeries. Doc. 27 at 22; *see* Tr. at 383, 402, 407-409, 412, 414. Absent substantial evidence that time off for recovery precluded Plaintiff from full-time work, it was not legal error for the ALJ to fail to consider his multiple surgeries as an additional basis for disability.

### b. Dr. Chirban's Treatment Notes.

Plaintiff argues that the ALJ erred in his reliance on the treatment notes of Dr. Chirban because these notes do not discuss Plaintiff's functional capacity and Dr. Chirban's report that Plaintiff was able to perform the functions of daily living does not translate into the ability to sustain full-time employment. Doc. 21 at 10-11. Plaintiff misrepresents the ALJ's reliance on Dr. Chirban's notes. The ALJ cited to Dr. Chirban's notes in support of his finding that Dr. Sannoufi's assessment of Plaintiff's functional capacity appeared to be exaggerated. Tr. at 28. He also cited to Dr. Chirban's notes in combination with Plaintiff's activities of daily living and Dr. McPhee's assessment to arrive at Plaintiff's RFC. *Id.* The ALJ did not, as Plaintiff argues, base his assessment of Plaintiff's functional capacity and his ability to sustain full time employment at a light level with limitations solely on Dr. Chirban's notes. The ALJ's treatment of these notes for the purposes cited above was not legal error.

### C. Plaintiff's Subjective Pain Testimony.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not

produce objective medical evidence of the pain . . . itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996) (same); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.").

In addition, unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, he or she may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283-84). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same).

Plaintiff testified that he stopped working in December 2003 due to closure of his work facility, and he decided to stay home to care for his daughter and to let his body rest due to lumbar problems and osteoarthritis in his left knee. Tr. at 492, 494, 498. He testified that he subsequently claimed disability as of June 1, 2004 because that is when his back impairments started to get "really bad." Tr. at 493. Plaintiff completed questionnaires on September 3, 2005, and December 14, 2005, in which he stated that he cannot sit or stand for long periods without pain and that he is limited in his daily activities such as shaving and getting in and out of a car or on and off a toilet. Tr. at 88, 92, 103. He stated that he makes breakfast, lunch, and snacks for his five year old

1  daughter, walks her to school and back, and helps her with her homework, but these tasks
2  are difficult because he is in constant pain.  Tr. at 102; *see* Tr. at 516.  He stated that he
3  does some cleaning, but needs to rest often, and he relies on his girlfriend to help out with
4  shopping and household tasks.  Tr. at 104-105.  He further testified at the hearing held on
5  February 3, 2009 that he is unable to exercise due to pain and only drives occasionally
6  because of pain getting in and out of the car and numbness in his legs.  Tr. at 489.  He
7  testified that he can only sit or stand for 10 or 15 minutes at a time.  Tr. at 495.  He stated
8  that he helps get his daughter, now 8, out the door and watches her walk to her school
9  next door rather than walk with her, his girlfriend does all the shopping and housework,
10 and even leaning over the sink to shave or brush his teeth makes his back "go crazy."  Tr.
11 516-18.  Plaintiff testified at the second hearing on September 8, 2010, that he still has
12 difficulty standing and walking and is able to stand for up to 20 minutes at a time and sit
13 for a half hour at a time, but he spends much of the day lying on the floor.  Tr. at 461-63.
14 He does some shopping and walks his daughter, now 10, to school, but his activities have
15 not changed significantly in the past two years.  Tr. at 463.

16 The ALJ stated that Plaintiff's medically determinable impairments could
17 reasonably be expected to cause only some of his alleged symptoms.  Tr. at 28.  He stated
18 that Plaintiff's testimony about the intensity, persistence, and limiting effects of his
19 symptoms were not entirely credible to the extent they were inconsistent with the "above
20 residual functional capacity assessment."  *Id.*  Plaintiff argues that the ALJ did not
21 articulate specific, legitimate reasons for discounting his "excess pain" testimony because
22 he merely made a broad statement without giving his specific reasoning.  Doc. 21 at 11.

23 The ALJ did not rely solely on a general statement for finding Plaintiff's
24 testimony less than credible, nor did he discount Plaintiff's testimony in its entirety.
25 Rather, he stated that evidence of Plaintiff's daily activities and the opinions of treating
26 physician Dr. Chirban and consultative examiner Dr. McPhee indicate that Plaintiff
27 should be "capable of lifting and carrying at least 10 pounds occasionally, and standing
28 and/or walking for at least 2 but less than 6 hours in an 8-hour workday."  *Id.*  The ALJ

went on to state that, giving Plaintiff the benefit of the doubt, and in light of his shoulder and knee impairments, Plaintiff would need to have a sit/stand option, could not crawl, crouch, squat, or kneel, should not use his upper extremities for work above the shoulder level or use his lower extremities for repetitive pushing or pulling, and, due to his complaint that his pain interferes with his concentration, he should be limited to unskilled work. *Id.*

Plaintiff's testimony concerning his daily activities does not provide clear and convincing evidence for discounting his pain testimony. The ALJ refers to the fact that Plaintiff was able to care for his 10-year-old daughter, prepare meals, perform housecleaning, and shop. Tr. at 24. As noted above, however, Plaintiff testified that he does these things on a limited basis, requires help with shopping and household chores, and that although he is able to care for his daughter, walk with her a short distance to school, and prepare meals, he cannot do these activities easily or without pain. Plaintiff also testified that he has difficulty bending over to shave, getting on and off a toilet, and experiences pain and numbness in his legs when getting in and out of a car. The ALJ does not point to any daily activities that discount Plaintiff's testimony.

Dr. Chirban's notes from December 22, 2008, reporting that Plaintiff's condition had improved and that he was able to perform all the activities of daily living without assistance (Tr. at 265), provide some evidence for discrediting Plaintiff's subjective pain testimony, particularly his testimony offered less than two months later at the February 3, 2009 hearing that he could only sit or stand for 10 or 15 minutes at a time and must rely on his girlfriend to do all household tasks. But Dr. Chirban's findings appear to be inconsistent with Plaintiff's own indications on forms he filled out for Dr. Chirban during pain relief consultations. *See, e.g.*, December 22, 2008 Pain Assessment Form, Tr. at 267-68 (indicating continuous lower back and left knee pain made worse by movement, hip pain most of the time, an average pain level of 8 on a scale of 1 to 10 with the worst pain at 9 and 10, and an ability to function at a 2 or 3). Absent an explanation or any objective medical basis for Dr. Chirban's contrary findings, the reports that Plaintiff

could perform all the activities of daily living do not provide a clear and convincing reason based on substantial evidence for discrediting Plaintiff's subjective complaints.

Dr. McPhee's opinion that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, could sit or stand at least 2 but less than 6 hours in an 8-hour workday, had no limitations on sitting, and had no need to alternate sitting and standing (Tr. at 28) provides some evidence for discrediting Plaintiff's description of his limitations. As noted above, the ALJ modified Dr. McPhee's assessment, finding that Plaintiff had the RFC to carry at least 10 pounds occasionally, was limited to sitting 6 hours in an 8-hour workday, and would need to alternate sitting and standing. Tr. at 27. This was because he found that although Dr. McPhee's opinion would be entitled to significant weight due to his medical expertise, his assessment was based on minimal review of the records and a non-extensive exam. Tr. at 28. The ALJ also credited Plaintiff's testimony regarding his shoulder and lower extremity limitations and his testimony of pain that was sufficient to interfere with his concentration. *Id.*

Taken as a whole, the evidence the ALJ relies on for discounting Plaintiff's subjective pain testimony provides some basis for finding this testimony less than credible, but falls short of providing specific, clear and convincing reasons based on substantial evidence. The ALJ fails to explain why the objective medical evidence could reasonably be expected to cause some but not all of Plaintiff's alleged symptoms. He also fails to explain how other evidence, including Dr. McPhee's limited physical exam, discredits some but not all of Plaintiff's complaints. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *See Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir.2007) (quoting *Lester,* 81 F.3d at 834). The ALJ's error in failing to list Plaintiff's documented lumbar problems as a severe impairment and his apparent failure to address or incorporate those impairments in his credibility assessment further shows that his credibility assessment was not supported by substantial evidence.

/ / /

**D.     Remedy.**

The decision to remand for further development of the record or for an award benefits is within the discretion of the Court. 42 U.S.C. § 405(g); *see Harman v. Apfel*, 211 F.3d 1172, 1173-74 (9th Cir. 2000). This Circuit has held, however, that an action should be remanded for an award of benefits where three conditions are met: the ALJ has failed to provide legally sufficient reasons for rejecting evidence, no outstanding issue remains that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the rejected evidence credited as true.

The Court has found that the ALJ failed to give legally sufficient reasons for not including Plaintiff's lumbar problems as severe impairments at step 2 and for not clearly incorporating the medical evidence establishing these impairments in his RFC assessment or his assessment of Plaintiff's credibility. The ALJ also erred in discounting Plaintiff's credibility with respect to some but not all of his subjective complaints without offering specific, clear and convincing reasons based on substantial evidence. As a result, under Ninth Circuit law, this evidence must be credited as true. *See Varney v. Secretary of Health and Human Services*, 859 F.2d 1396 (9th Cir. 1988) ("if grounds for [discrediting a claimant's testimony] exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision."); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.' " (citing *Hammock v. Bowen,* 879 F.2d 498, 502 (9th Cir.1989); *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.2000) (same); *Benecke v. Barnhart,* 379 F.3d 587 (9th Cir.2007); ( "Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true.").

No outstanding issues remain that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled as of June 1, 2004 were the rejected evidence of his subjective

1 complaints credited as true.  The vocational expert testified at the February 3, 2009 hearing that Plaintiff's testimony, particularly with respect to his postural limitations, would preclude him from all full time work.  Tr. at 534-35.  The Court will therefore reverse the ALJ's determination and remand for an award of benefits.

**IT IS ORDERED:**

1. Defendant's decision denying benefits is **reversed**.
2. The case is **remanded** for an award of benefits.

Dated this 15th day of July, 2013.

_____
David G. Campbell
United States District Judge